IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHICAGO BOARD OF EDUCATION,<br>SCHOOL DIRECTORS OF DISTRICT NO. 299,<br>COUNTY OF COOK AND STATE OF<br>ILLINOIS,<br><br>    Defendant. | CASE NO. 14-CV-10285<br><br>JURY DEMAND |

## **COMPLAINT**

Plaintiff United States of America ("United States") alleges:

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

### Jurisdiction and Venue

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f), § 2000e-6, and 28 U.S.C. §§ 1331, 1343(a) and 1345.

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3), § 2000e-6(b), and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action occurred.

### Parties

4. Defendant, Chicago Board of Education, School Directors of District No. 299, County of Cook and State of Illinois ("Board of Education"), is a corporate, governmental body, and a political subdivision of the State of Illinois, established pursuant to the laws of the State of

Illinois. The Board of Education is located in Chicago, Illinois, within the jurisdiction of this Court.

5.  The Board of Education is a "person" within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

6.  On or around June 15, 2010, Jane Bushue filed a timely charge of discrimination (charge number 440-2010-03316) with the Chicago Office of the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against based on sex (pregnancy). Pursuant to Section 706 of Title VII, the EEOC investigated the charge, found reasonable cause to believe that a Title VII violation had occurred with respect to Ms. Bushue and a class of similarly situated individuals, and unsuccessfully attempted to conciliate the charge. The EEOC subsequently referred the charge to the United States Department of Justice.

7.  On or around September 5, 2012, Jennifer Mollis filed a timely charge of discrimination (charge number 440-2012-05345) with the Chicago Office of the EEOC alleging that she had been discriminated against based on sex (pregnancy). Pursuant to Section 706 of Title VII, the EEOC investigated the charge, found reasonable cause to believe that a Title VII violation had occurred with respect to Ms. Mollis and a class of similarly situated individuals, and unsuccessfully attempted to conciliate the charge. The EEOC subsequently referred the charge to the United States Department of Justice.

8.  On August 11, 2014, the United States sent notice to the Board of Education of its intent to file a complaint against the Board of Education for violating Title VII with respect to the allegations raised in the referred EEOC charges, including allegations of a pattern or practice of discrimination.

9. All conditions precedent to the filing of this Complaint have been performed or have occurred.

Factual Allegations Common to All Counts

10. The Board of Education hired Mary Weaver as principal of Scammon Elementary School ("Scammon") in 2006. Ms. Weaver has served as principal of Scammon from 2006 to the present.

11. Principal Weaver's supervisory responsibilities over Scammon teachers from 2008 through 2012 included, but were not limited to: completing performance evaluations, conducting classroom observations, issuing discipline, and making recommendations to the Board of Education for its approval regarding the termination of teachers from Scammon.

12. On December 16, 2009, the Board of Education adopted the Comprehensive Non-Discrimination Title IX and Sexual Harassment Policy ("Policy") as section 102.8 of the Chicago Public Schools Policy Manual. The Policy prohibits sex discrimination.

13. The Policy adopted by the Board of Education on December 16, 2009, does not include a description of pregnancy discrimination.

14. On April 25, 2012, the Board of Education amended the Comprehensive Non-Discrimination Title IX and Sexual Harassment Policy ("Amended Policy").

15. The Amended Policy adopted by the Board of Education on April 25, 2012, does not include a description of pregnancy discrimination.

16. From 2008 to 2012, Principal Weaver evaluated the performance of non-tenured teachers (*i.e.* probationary appointed teachers ("PATs")) each school year and the performance of tenured teachers every other school year. The performance evaluation included a short

summary of the teacher's overall strengths and weaknesses, and an overall rating. The possible overall ratings were "outstanding," "excellent," "satisfactory," or "unsatisfactory."

17. Ms. Bushue was employed as a non-tenured (or PAT) second grade teacher at Scammon from September 2007 to August 2010, and was supervised by Principal Weaver.

18. Before Ms. Bushue was pregnant, Principal Weaver completed Ms. Bushue's 2008-2009 performance evaluation in or around February 2009, describing Ms. Bushue as "an excellent teacher who consistently tries to implement new and creative strategies in her classroom" and noted no performance weaknesses. Ms. Bushue's overall performance was rated "excellent."

19. In November 2009, Ms. Bushue informed Principal Weaver that she was pregnant.

20. After learning of Ms. Bushue's pregnancy, Principal Weaver targeted her for termination from Scammon.

21. In or around February 2010, approximately two months before Ms. Bushue was due to give birth and scheduled to take maternity leave, Principal Weaver completed Ms. Bushue's 2009-2010 performance evaluation. Principal Weaver targeted Ms. Bushue by giving her an overall rating performance as "satisfactory," a lower rating than the previous rating year.

22. The only weakness Principal Weaver noted in Ms. Bushue's 2009-2010 "satisfactory" performance evaluation was a failure to implement instructional strategies for the last three years, a criticism Ms. Bushue denies.

23. In or around March 2010, Principal Weaver informed Ms. Bushue that she was recommending Ms. Bushue's termination from Scammon to take effect at the close of the current school year.

24. Ms. Bushue received a letter dated May 7, 2010, from the chief executive officer of the Board of Education informing her that her employment as a teacher with Scammon was terminated as of the end of the school year.

25. Ms. Mollis taught special education at Scammon from 2007 to 2013, and was supervised by Principal Weaver.

26. Before Ms. Mollis became pregnant, Principal Weaver completed Ms. Mollis' 2008-2009 performance evaluation in or around February 2009, describing Ms. Mollis as "an incredible teacher who puts children first at all times" and noting no performance weaknesses. Ms. Mollis received the top overall performance rating of "superior."

27. Also before Ms. Mollis became pregnant, Principal Weaver completed Ms. Mollis' 2009-2010 performance evaluation in or around February 2010, describing Ms. Mollis as having "done a wonderful job scheduling and fulfilling all of the components of her ever changing job," and rating Ms. Mollis' overall performance as "excellent."

28. In December 2010, Ms. Mollis informed Principal Weaver that she was pregnant.

29. After learning of Ms. Mollis' pregnancy and her related childbirth, Principal Weaver targeted Ms. Mollis for termination from Scammon.

30. Principal Weaver targeted Ms. Mollis by identifying increasingly more weaknesses during classroom observations.

31. Subsequent to her classroom observations, Principal Weaver told Ms. Mollis that she was lowering her performance evaluation rating and intended to issue her a Form E-3 Evaluation of Unsatisfactory Service of a Tenured Teacher, which could lead to termination.

32. Because she anticipated termination from her employment at Scammon after discussions with Principal Weaver, Ms. Mollis sought and secured a teaching position at another school.

33. From 2009 to at least 2012, Principal Weaver targeted all teachers at Scammon who became pregnant and/or who returned to work at Scammon after their pregnancies by subjecting them to disparate treatment with regard to performance evaluation ratings, classroom observations, discipline, and threatened and/or actual termination.

34. During this timeframe, only one teacher who was employed at Scammon at the time that she became pregnant did not want to return to teach after her pregnancy.

35. In an effort to terminate Ms. Bushue, Ms. Mollis, and similarly situated teachers, Principal Weaver subjected them to disparate treatment with regard to performance evaluation ratings, classroom observations, discipline, and threatened termination.

36. For the school years 2008-2009 and 2009-2010, five Scammon teachers, including Ms. Bushue, were pregnant. All who Principal Weaver had evaluated previously were targeted and received lower performance evaluation ratings after announcing their pregnancies. All were terminated from Scammon by the Board of Education at or around the end of school year 2009-2010.

37. There were non-pregnant Scammon teachers who were not terminated at the end of the 2009-2010 school year whose performance evaluation ratings were the same as or lower than the performance ratings of the targeted pregnant Scammon teachers.

38. Also, there were non-pregnant tenured Scammon teachers who were not terminated at the end of the 2009-2010 school year who had similar or less tenure than the targeted pregnant Scammon teachers who were terminated by the Board of Education that year.

39. In approximately April 2010, an anonymous complaint was filed with the Board of Education's Equal Opportunity Compliance Office ("EOCO") alleging, among other things, that Principal Weaver discriminated against Ms. Bushue and other pregnant teachers by terminating their employment. In addition, at least one similarly situated pregnant Scammon teacher whom the Board of Education terminated at or around the end of school year 2009-2010 filed a complaint with the EOCO claiming discrimination based on pregnancy.

40. In school year 2010-2011, after two tenured teachers disclosed their pregnancies to her, Principal Weaver targeted them for termination telling one teacher that she was terminated and threatening to fire the other.

41. In total, beginning in 2009, Principal Weaver targeted all eight teachers who became pregnant and/or who returned to work at Scammon after their pregnancies. Her targeting effectively removed all eight teachers from their employment at Scammon.

42. From approximately 2009 to 2012, Principal Weaver engaged in behaviors towards, and made negative comments to and about, pregnant Scammon teachers, including, but not limited to: responding to a teacher's announcement of her pregnancy by saying, "I can't believe you are doing this to me. You are going to be out right before [mandatory] testing!;" asking a Scammon staff member if a teacher who had been pregnant was pregnant again; ignoring a teacher after the teacher announced her pregnancy; ignoring a teacher's request to meet regarding her upcoming maternity leave; repeatedly asking a teacher who was nursing and expressing breast milk questions such as, "That isn't over yet?" and "When will you be done with that?"; and stating that a teacher who requested an accommodation to express breast milk complained too much and was too high maintenance.

43. Ms. Bushue, Ms. Mollis, and similarly situated employees suffered emotional distress as a result of sex discrimination based on their pregnancies and/or related childbirths.

44. Ms. Bushue and similarly situated employees also suffered monetary loss as a result of sex discrimination based on their pregnancies and/or related childbirths.

COUNT I
Title VII, 42 U.S.C. §§ 2000e-2(a) & 2000e(k)
Sex Discrimination Based on Sex (Pregnancy)
Against Ms. Bushue, Ms. Mollis, and Similarly Situated Employees

45. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-44 above.

46. Ms. Bushue, Ms. Mollis, and similarly situated pregnant teachers were discriminated against because of their pregnancies, childbirths, or related medical conditions.

47. Ms. Bushue, Ms. Mollis, and similarly situated teachers were pregnant and disclosed their pregnancies to Principal Weaver.

48. Principal Weaver knew that Ms. Bushue, Ms. Mollis, and similarly situated teachers were pregnant and/or had given birth when she targeted or recommended them for termination from Scammon.

49. In an effort to terminate Ms. Bushue, Ms. Mollis, and similarly situated teachers, Principal Weaver targeted the teachers by subjecting them to disparate treatment with regard to performance evaluation ratings, classroom observations, discipline, and threatened termination.

50. Principal Weaver also subjected pregnant teachers to disparate treatment by recommending their terminations.

51. In total, from 2009 to 2012, Principal Weaver targeted for termination all eight Scammon teachers who became pregnant and/or who returned to work at Scammon after their

pregnancies. Her targeting effectively removed all eight teachers from their employment at Scammon.

52. Ms. Bushue, Ms. Mollis, and similarly situated teachers were performing their duties satisfactorily when they were targeted for termination and/or terminated.

53. Non-pregnant Scammon teachers who were similar in all relevant aspects to the pregnant teachers at Scammon, but for pregnancy, were not similarly targeted for termination and/or terminated.

54. The Board of Education approved Principal Weaver's recommendations for the terminations of all five pregnant teachers whom she had targeted for termination at the end of the 2009-2010 school year.

55. Ms. Bushue, Ms. Mollis, and similarly situated teachers were subjected to disparate treatment in their removal from Scammon.

56. For the foregoing reasons, the Board of Education has discriminated against Ms. Bushue, Ms. Mollis, and similarly situated teachers because of their sex (pregnancy), in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) & 2000e(k).

COUNT II
Title VII, 42 U.S.C. §§ 2000e-6 2000e(k)
Pattern or Practice of Discrimination Based on Sex (Pregnancy)

57. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-56 above.

58. At Scammon, from 2009 until at least 2012, there existed a regular, purposeful, and less-favorable treatment of teachers because of their sex (pregnancies).

59. During this time frame, Principal Weaver targeted all eight teachers at Scammon for termination who were pregnant and/or who returned to Scammon after their pregnancies.

60. Principal Weaver's targeting effectively removed all eight teachers from their employment at Scammon.

61. The acts and practices described in paragraphs 1-60 above constitute a pattern or practice of discrimination based on the basis of sex (pregnancy) in violation of Section 707 of Title VII, 42 U.S.C. §§ 2000e-6 & 2000e(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States prays that this Court grant the following relief:

a. Enjoin Defendant Board of Education from further discrimination against Ms. Bushue, Ms. Mollis, and similarly situated teachers;

b. Order Defendant Board of Education to develop and implement appropriate and effective measures to prevent discrimination, including but not limited to policies, procedures, and training for employees and the Board of Education;

c. Provide make-whole relief to Ms. Bushue and similarly situated teachers to compensate them for their injuries caused by the discriminatory conduct;

d. Award damages to Ms. Bushue, Ms. Mollis, and similarly situated pregnant teachers to compensate them for pain and suffering caused by the discriminatory conduct; and

e. Award such additional relief as justice may require, together with the United States' costs in this action.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Dated: December 23, 2014

                    Respectfully submitted,

                    VANITA GUPTA
                    Acting Assistant Attorney General
                    Civil Rights Division
                    United States Department of Justice

BY:    DELORA L. KENNEBREW
           Chief
           Employment Litigation Section
           Civil Rights Division
           United States Department of Justice

_____
LORI B. KISCH (DC Bar No. 491282)
Special Litigation Counsel
Employment Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW, PHB, Room 4605
Washington, DC 20530
Telephone: (202) 305-4422
Facsimile: (202) 514-1105
Email: lori.kisch@usdoj.gov

_____
PATRICIA L. STASCO (DC Bar No. 490041)
Senior Trial Attorney
Employment Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW, PHB, Room 4711
Washington, DC 20530
Telephone: (202) 353-2297
Facsimile: (202) 514-1105
Email: patricia.stasco@usdoj.gov


ZACHARY T. FARDON
United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
United States Attorney's Office
Northern District of Illinois


ATTORNEYS FOR THE UNITED STATES OF AMERICA